Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MORGAN,<br><br>                Plaintiff,<br><br>        vs.<br><br>SPORTSMAN'S WAREHOUSE HOLDINGS, INC., JON BARKER, MARTHA BEJAR, PHILIP C. WILLIAMSON, CHRISTOPHER EASTLAND, GREGORY P. HICKEY, RICHARD MCBEE, and JOSEPH P. SCHNEIDER,<br><br>                Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Anthony Morgan ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Sportsman's Warehouse Holdings, Inc. ("Sportsman's Warehouse" or the "Company") and the members of Sportsman's Warehouse's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Sportsman's Warehouse will be acquired by Great Outdoors Group, LLC ("Great Outdoors Group") through Great Outdoors Group's subsidiary Phoenix Merger Sub I, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On December 21, 2020, Sportsman's Warehouse issued a press release announcing that it had entered into an Agreement and Plan of Merger dated December 21, 2020 (the "Merger Agreement") to sell Sportsman's Warehouse to Great Outdoors Group. Under the terms of the Merger Agreement, each Sportsman's Warehouse stockholder will receive $18.00 in cash for each share of Sportsman's Warehouse common stock they own (the "Merger Consideration").

3. On February 16, 2021, Sportsman's Warehouse filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Sportsman's Warehouse stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Robert W. Baird & Co. Incorporated ("Baird"); and (ii) Baird's and Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

- 2 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4. In short, unless remedied, Sportsman's Warehouse's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company operates several retail locations in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Sportsman's Warehouse.

9. Defendant Sportsman's Warehouse is a Delaware corporation, with its principal executive offices located at 1475 West 9000 South Suite A, West Jordan, Utah 84088. The Company operates 103 stores across 27 states, including stores in Humboldt and Sonoma Counties, California.

The Company is known for its top-quality, brand-name products, strong customer service and deep ties to conservation groups across the country. Sportsman's Warehouse's common stock trades on the Nasdaq Global Select Market under the ticker symbol "SPWH."

10. Defendant Jon Barker ("Barker") has been President of the Company since March 2017, and Chief Executive Officer ("CEO") and a director since March 2018.

11. Defendant Martha Bejar ("Bejar") has been a director of the Company since February 2019.

12. Defendant Philip C. Williamson ("Williamson") has been a director of the Company since September 2019.

13. Defendant Christopher Eastland ("Eastland") has been a director of the Company since August 2009, and previously served as Chairman of the Board from September 2010 to April 5, 2019.

14. Defendant Gregory P. Hickey ("Hickey") has been a director of the Company since April 2014.

15. Defendant Richard McBee ("McBee") has been a director of the Company since November 2018.

16. Defendant Joseph P. Schneider ("Schneider") has been Chairman of the Board since April 2019, and a director of the Company since April 2014.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

18. Great Outdoors Group is a privately-held Delaware limited liability company with its principal executive offices located at 2500 East Kearney, Springfield, Missouri 65898. It is a holding company for the operations of Bass Pro Shops, Cabela's, White River Marine Group and a collection of nature-based resorts.

19. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Great Outdoors Group.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

20. Sportsman's Warehouse is an outdoor sporting goods retailer focused on meeting the everyday needs of the seasoned outdoor veteran, the first-time participant, and everyone in between. The Company's mission is to provide outstanding gear and exceptional service to inspire outdoor memories. The Company tailors its broad and deep merchandise assortment to meet local conditions and demand, offering everyday low prices, providing friendly support from knowledgeable and highly trained staff, and offering a top-tier e-commerce experience, extensive in-store events and educational programming. These core strategies help position Sportsman's Warehouse as the "local outdoor experts" and the preferred place to not only shop, but to also share outdoor-based experiences in the communities it serves. As a result, the Company is growing its loyal customer base in existing markets, expanding its footprint into new markets, and increasing its omni-channel presence in both new and existing markets.

21. The Company was founded in 1986 as a single retail store in Midvale, Utah and has grown to 103 stores across 27 states. Today, the Company has the largest outdoor specialty store base in the Western United States and Alaska. Stores range from 7,500 to 65,000 gross square feet, with an average size of approximately 40,000 gross square feet, and store layout is adaptable to both standalone locations and strip centers. Sportsman's Warehouse also has the largest offering of firearms available online for in-store purchase and buy-online-pickup-in-store when compared to the offerings of its major competitors. Together, these features and capabilities enable the Company to effectively serve markets of multiple sizes, from Metropolitan Statistical Areas with populations of less than 75,000 to major metropolitan areas with populations in excess of 1,000,000, while

generating consistent four-wall adjusted earnings before interest, taxes, depreciation and amortization margins and returns on invested capital across a range of store sales volumes.

22. On December 2, 2020, Sportsman's Warehouse announced its third quarter 2020 financial results. The Company reported net sales of 385.7 million, an increase of $143.2 million, or 59.1%, as compared to the third quarter of fiscal year 2019; a same store sales increase of 40.9% compared to the third quarter of 2019; gross profit of $130.6 million, compared to $84.2 million in the comparable prior year period; net income of $30.5 million compared to net income of $10.5 million in the third quarter of 2019; and adjusted net income of $31.5 million compared to adjusted net income of $10.8 million in the third quarter of 2019. In addition, adjusted EBITDA was $49.9 million compared to $23.2 million in the comparable prior year period and diluted earnings per share were $0.68 compared to diluted earnings per share of $0.24 in the comparable prior year period. Commenting on the Company's performance, defendant Barker stated:

> Sportsman's Warehouse continued its exceptional performance in the third quarter of 2020. We were extremely pleased with the efforts of associates in all of our facilities as we worked as a team to safely and effectively serve customers, both new and returning. During the third quarter, same store sales increased 41% compared to the same period last year, driven by elevated participation in fishing, camping and hunting, and our continued market share gains in firearms.
>
> We continue to be excited about the expansion of our ecommerce capabilities, with ecommerce-driven sales up over 200% from the prior year period. We are also highly encouraged by the strong visitor traffic on both our website and inside of our stores. We opened 9 new stores year-to-date in 2020, taking the total Sportsman's Warehouse store count to 111. In addition, our first Legacy Shooting Center, which opened earlier this year, is performing ahead of expectations.
>
> We believe we are well positioned to continue to capitalize on substantial growth opportunities, including heightened participation in outdoor activities, ecommerce growth, and new store expansion to create long-term shareholder value.

**The Proposed Transaction**

23. On December 21, 2020, Sportsman's Warehouse issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

- 6 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

SPRINGFIELD, Mo. And WEST JORDAN, Utah, Dec. 21, 2020 -- In an effort to better serve its loyal customers, Sportsman's Warehouse has entered into a definitive agreement to join the Great American Outdoors Group, parent company of Bass Pro Shops, Cabela's, White River Marine Group and a collection of nature-based resorts. The Great American Outdoors Group will remain a private company with a long-term view to do what is best for its customers, team members and conservation initiatives. As part of the agreement, Sportsman's Warehouse will be acquired for $18.00 per share in cash.

The driving force behind the partnership is the two companies' similar histories and highly complementary business philosophies and geographic footprints. Both entities share a passion with their customers for fishing, camping, hunting, boating and other outdoor activities. Likewise, both are highly acclaimed retailers with well-deserved reputations for a broad offering of outstanding brand name and proprietary products, superior customer service, deeply knowledgeable team members and an unwavering passion for conservation. Uniting together represents an unprecedented "win-win" opportunity for outdoor enthusiasts.

"We are excited to be joining the Great American Outdoors Group. This merger brings together the greatest brands in the outdoor industry. As we look to the future, the combined entities provide our passionate associates with greater opportunities to serve the outdoor enthusiast. I couldn't be more proud of the nearly 8,000 Sportsman's Warehouse associates and their success in building our brand over the last 33 years. We look forward to a smooth transition and building our partnership," said Sportsman's Warehouse CEO Jon Barker.

"Today is a happy day for our companies, outdoor enthusiasts and for the cause of conservation," said Bass Pro Shops Founder and Great American Outdoors Group Leader, Johnny Morris. "As outdoor sports specialists with unwavering dedication to people who fish, hunt and enjoy the outdoors, we greatly admire the passionate team at Sportsman's Warehouse for their commitment to their customers and the sports we all love. By combining our best practices, our aim is to give our customers a best-of-the-best experience while further uniting them to support conservation," added Morris.

**Sportsman's Warehouse customers can expect all of what they love now plus a whole lot more**

**Widely expanded product offerings including:**

- **Access to the world's largest selection of premium fishing tackle** including legendary Bass Pro Shops and other premier brands
- **The largest selection of premium hunting gear** including the iconic Cabela's brand
- **Sportsman's Warehouse will be able to offer customers the world's leading boat brands, side-by-sides and ATVs at money-saving prices**. The company's great family of brands, Tracker, Nitro, Ranger, Ascend Kayaks and other products, are all built right here in the USA by American craftsmen and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

sold directly to customers through our stores and a select group of dealers, effectively giving customers the opportunity to buy factory-direct at money-saving prices.

**Low prices – guaranteed.**

- **Sportsman's Warehouse customers will enjoy The Great American Outdoors Group "Low Price Guarantee"** which offers the lowest everyday price on its full assortment, and will match or beat any qualified competing offers in store or online.

**Greater convenience and expanded online services and selection**

- **Receiving the best products faster** by leveraging the combined company's extensive network of distribution centers and stores to get the best products the fastest way possible in stores or online.
- **Maintaining a strong commitment to a regional and seasonal focus.** Customers will continue to enjoy localized merchandise and efforts like area weather conditions, hunting and fishing reports, photo braggin' boards and the opportunity to get "hands-on" with products alongside the guidance of local experts.

**Uniting together to better serve customers and the outdoors**

The companies have collectively demonstrated unmatched commitment to customer service and satisfaction. Bass Pro Shops recently ranked as the number three most reputable retailer in America by Reputation.com. Both companies are keenly focused on conservation initiatives and recognized for their commitment to serving their communities responsibly, ranking at the top of outdoor retailers on firearm safety and compliance.

**Conservation First**

More than anything, the partnership will invite Sportsman's Warehouse employees and customers to become a part of something bigger – a legendary commitment to conservation.

Inspired by the vision of Johnny Morris, The Great American Outdoors Group is leading North America's largest conservation movement – bringing together millions of passionate customers alongside dedicated team members, industry partners and leading conservation organizations – to collectively shape the future of the outdoors and all who love it for generations to come.

This unprecedented alliance is bringing together sportsmen and women to protect millions of acres of wildlife habitat every year, introduce thousands of kids and families to nature, and achieve major legislative victories that advance the outdoors and all who love it.

**Insiders' Interests in the Proposed Transaction**

24. Sportsman's Warehouse insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Sportsman's Warehouse.

25. Notably, Sportsman's Warehouse insiders stand to reap substantial financial benefits for securing the deal with Great Outdoors Group. Pursuant to the Merger Agreement, all outstanding restricted stock units ("RSUs") and performance based restricted stock units ("PSUs") will vest and convert into the right to receive the Merger Consideration. The following table summarizes the value of the equity awards that Company insiders stand to receive:

| Name | RSUs ($) | PSUs (at Maximum Level of Performance) ($) | Total ($) |
|---|---|---|---|
| Jon Barker | 6,009,462 | 3,117,204 | 9,126,666 |
| Robert K. Julian | 2,582,334 | 1,358,784 | 3,941,118 |

26. In addition, if they are terminated in connection with the Proposed Transaction, Sportsman's Warehouse's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash ($)[(1)] | Equity ($)[(2)] | Perquisites/Benefits ($)[(3)] | Total ($) |
|---|---|---|---|---|
| Jon Barker | 1,495,000 | 9,126,666 | 54,169 | 10,675,835 |
| Robert K. Julian | 537,708 | 3,941,118 | 38,612 | 4,517,438 |

**The Proxy Statement Contains Material Misstatements or Omissions**

27. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Sportsman's Warehouse's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

28. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Baird; and (ii) Baird's and Company insiders' potential conflicts of interest.

**Material Omissions Concerning the Company's Financial Projections and Baird's Financial Analyses**

29. The Proxy Statement omits material information regarding the Company's financial projections.

30. For example, the Proxy Statement fails to set forth the key assumptions and inputs used by Sportsman's Warehouse management in preparing the Three Year Management Projections.

31. The Proxy Statement also omits material information regarding Baird's financial analyses.

32. The Proxy Statement describes Baird's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Baird's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Sportsman's Warehouse's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Baird's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

33. With respect to Baird's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the unlevered free cash flows utilized in the analysis, and each of the line items underlying the unlevered free cash flows utilized by Baird[1]; (ii) quantification of the inputs and assumptions

---

[1] The Proxy Statement sets forth that:

underlying the discount rates ranging from 8.75% to 11.75%; and (iii) Baird's basis for assuming terminal values ranging from 7.0x to 8.5x year 2025 EBITDA.

34. Without such undisclosed information, Sportsman's Warehouse stockholders cannot evaluate for themselves whether the financial analyses performed by Baird were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Baird's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

35. The omission of this material information renders the statements in the "Opinion of Robert W. Baird & Co. Incorporated" and "Certain Company Forecasts" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Baird's and Company Insiders' Potential Conflicts of Interest***

36. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Baird and Company insiders.

37. The Proxy Statement sets forth that "[p]ursuant to its engagement, Baird will receive a transaction fee of approximately $7.6 million for its services, substantially all of which is contingent

---

> Baird performed a discounted cash flow analysis utilizing the projected unlevered free cash flows (defined as net income excluding after-tax net interest, plus depreciation and amortization, less capital expenditures and increases in net working capital, plus/minus changes in other operating and investing cash flows) of Sportsman's Warehouse from 2020 to 2025, as set forth in the DCF Projections provided by our senior management.

Proxy Statement at 63. The Proxy Statement, however, sets forth a different calculation for the Company's unlevered free cash flows set forth in the "DCF Projections." *See, id*. at 48 (unlevered free cash flows "calculated by starting with Adjusted EBIT, applying the projected statutory tax rate, adding back depreciation and amortization, subtracting capital expenditures and making adjustments for changes in working capital").

upon the consummation of the merger." *Id*. at 64. The Proxy Statement fails, however, to disclose the amount of Baird's compensation that is contingent upon consummation of the Proposed Transaction.

38. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

39. The Proxy Statement also fails to disclose material information concerning the conflicts of interest faced by Sportsman's Warehouse insiders.

40. In the December 21, 2020 press release announcing the Proposed Transaction, defendant Barker commented:

> We are excited to be joining the Great American Outdoors Group. This merger brings together the greatest brands in the outdoor industry. As we look to the future, the combined entities provide our passionate associates with greater opportunities to serve the outdoor enthusiast. I couldn't be more proud of the nearly 8,000 Sportsman's Warehouse associates and their success in building our brand over the last 33 years. We look forward to a smooth transition and building our partnership,

41. The Proxy Statement, however, fails to disclose whether any of Great Outdoors Group's proposals or indications of interest mentioned management retention, consulting arrangements or equity participation in the combined company.

42. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43. The omission of this material information renders the statements in the "Opinion of Robert W. Baird & Co. Incorporated," "Background of the Merger" and "Interests of Certain Persons

in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

44. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Sportsman's Warehouse will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Baird, and Baird's and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

49. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

51. Plaintiff repeats all previous allegations as if set forth in full.

52. The Individual Defendants acted as controlling persons of Sportsman's Warehouse within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sportsman's Warehouse, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

55. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Sportsman's Warehouse's stockholders will be irreparably harmed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Sportsman's Warehouse, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Sportsman's Warehouse stockholders;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 24, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
  -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*